### IN RE BLACK'S ESTATE
### HALL ET AL. v. STATE ET AL.
(No. 1025; July 17, 1923; 216 Pac. 1059.)

APPEAL AND ERROR—JURISDICTION—PROBATE LAW—PROCEEDS TO DE-
TERMINE HEIRSHIP—DEPOSITIONS—DESCENT AND DISTRIBUTION—
EVIDENCE—DECLARATIONS.

1. On appeal from judgment in a proceeding to declare heir-
ship under Comp. St. 1920, §§ 6979-6981, begun prior to
the expiration of one year from issuance of letters of
administration of a decedents estate, as required by Sec-
tion 6979, but after the expiration of such year an amend-
ed petition was filed, and thus a doubt arises as to juris-
diction; the Supreme Court has the power to remand the
cause for another hearing in a proceeding not presenting
such doubtful question.

2. The duty to investigate claims of alleged heirship ·is not
part of the ordinary duty of administrators, but where an
administrator, when directed by the court to investigate
such claims, took depositions relating thereto, such de-
positions may be regarded as though taken on a commis-
sion issued for that purpose.

3. In a proceeding to determine rights of heirs to an estate
of one who had removed from Wyoming to the State of
Arkansas where he died shortly after, it was the duty of
petitioners to submit available evidence to establish
the identity of deceased as the person whose estate was
being administered in this state.

4. In a proceeding to declare heirship, wherein it was alleged
that decedent died in Arkansas, evidence of a physician,
who had treated decedent, that in the fall of 1917 he
stated that he was going back in the hills of Arkansas or
the Ozarks and look around and get a piece of land and
settle down was not irrelevant nor incompetent.

5. In proceeding to declare heirship, where evidence connect-
ed the mother-in-law of claimant with the family of de-
cedent, evidence of claimant that his mother in-law, now
deceased for several years, when she lived with claimant,
had discussed her family and the members thereof, was
admissible.

6. The right of the state to an order for an escheat by inter-
vening in a statutory proceeding by petitioners for the
determination of heirship in the matter of the adminis-

tration of an estate, is doubtful, in view of Comp. St.
1920, Sec. 3912, prescribing the procedure to be followed
for the recovery of escheated property, viz, the filing of
an information by the prosecuting attorney, alleging
grounds on which the recovery is claimed.

7. The presumption of law that an intestate has left heirs
capable of succeeding to his estate, does not remove the
necessity that those claiming to be heirs shall establish
their alleged kinship by satisfactory evidence.

ERROR to District Court, Big Horn County; PERCY W.
METZ, Judge.

Proceedings by David Hall and others to determine the
rights of heirs to the estate of James Black, deceased, in
which the State of Wyoming intervened. There was a
judgment entered on a finding that petitioners failed to in-
troduce sufficient proof to establish their heirship to the
estate and they bring error.

*Roderick N. Matson* and *Shouse* and *Rowland* for plain-
tiffs in error.

Plaintiffs in error, claim as heirs-at-law of James Black,
deceased; the Trial Court held their evidence insufficient to
establish their relationship to the deceased. While the law
applicable to the question of sufficiency of evidence to estab-
lish heirship covers a wide range, plaintiffs contend that
the ruling and judgment of the court in this case is con-
trary to the evidence and contrary to law; claimants own
testimony has been sufficient to prove relationship. (Smith
v. White, 165 Mo. 590.) The question was considered in
the following cases. (In re Clarke's Estate, 13 Cal. App.
786, 110 Pac. 828; Adie v. Comm. 25 Grat. (Va.) 712; In
re Colbert's Estate, 59 Mont. 455, 153 Pac. 1022; Rich-
mond v. Taylor, 159 N. W. 435.) Common reputation in
the family as to who are members when no superior evi-
dence is obtainable to prove pedigree, legitimacy and mar-
riage has been held sufficient. (In re Picken's Estate, 123
Pa. 14, 25 L. R. A. 477.) All testimony introduced tending
to prove that James Black, deceased was a member of the

same family as Kizzie Black, was material. (Selman v. Lee, 6 Bush (Ky.) 215; Rogers v. Park, 4 Hump (Tenn.) 480.) No other claims of heirship were filed; An escheat to the estate will not be awarded unless it be clear that there are no heirs of deceased to be found. (In re Sullivan's Estate, 48 Wash. 631, 94 Pac. 483; University v. Harrison, 90 N. C. 385.) It is true that memory of witnesses as to dates was vague, but this is not strange considering the time which has elapsed. (McKeown v. Brown, 167 Ia. 489.) In analyzing the testimony there will appear no discrepancy tending to disprove that plaintiffs in error are the next of kin of deceased. The court erred in striking out testimony of the witness Charles as to statements of his wife's mother regarding members of her family, such statements being admissible to establish pedigree. (Cuddy v. Brown, 78 Ill. 415; Stein v. Mentz 94 S. W. 447; In re Kennedy, 143 N. Y. S. 404; Smith v. Smith, 140 Wis. 599; Wolf v. Wilhelm, 146 S. W. 216.) Statements made by deceased as to his plans and intentions were material and admissible on the question of his identity and the court erred in striking out the testimony of the witness Harris with respect thereto. (Smith v. Smith supra; In re Kennedy supra.)

*W. L. Walls,* Atty. General for defendant in error.

The proofs offered by plaintiffs in error in support of their claim of relationship to deceased were so indifferent and uncertain as to afford the trial court little or no information as to whether the decedent, James Black was related to them; the question of kinship and of the right of plaintiffs in error to inherit if such right exists, would seem to be a question susceptible of at least some degree of intelligent proof. The cases cited by them do not sustain their contention. Smith v. White, 65 S. W. 1013, is one where a jury had found on the controverted fact of relationship. There is nothing showing that the finding is based upon the sole testimony of the plaintiff, the same may be said of Keary v. Barritt, In re Clark, Addy v. Comm. and all of

the other authority cited. The state does not contend that there are no heirs of James Black, deceased, but does contend that these plaintiffs in error are not his heirs and this conclusion is sustained by the record. In the case at bar they must recover on the unsupported testimony of F. A. Charles, which is contradicted by one of their own witnesses and frequently by the witness himself. We agree with all of the authorities cited, and it is unnecessary to discuss them individually; the testimony of Hall was not excluded to grant the prayer of either of the plaintiffs in error in view of the state of the record it would not be in accordance with justice.

POTTER, Chief Justice.

This case is here on error for the review of an order of the District Court in Big Horn County, in the probate proceeding for the administration of the estate of James Black, deceased, upon a hearing of a petition of the plaintiffs in error herein praying that the court ''ascertain and declare the rights of all persons in and to said estate, and all interests therein, and to whom distribution thereof should be made,'' and that if said petitioners are found to be the sole and lawful heirs of said decedent that an order be made directing distribution to them.

The material facts of the procedure, preceding the order complained of, are as follows: On July 16, 1918, an order was made in said court appointing H. H. Hime as administrator of the estate of James Black, deceased, upon the petition of said Hime, an alleged creditor of the deceased; the order reciting that the said James Black had died in the state of Arkansas on or about said date, and that he was a resident of said Big Horn County at the time of his death, leaving an estate in said county and within the jurisdiction of said court. On August 28, 1918, the administrator's first report was filed, stating among other things: That said James Black died at the town of Edgemont, Arkansas, where he was ''sojourning on account of ill health;'' that in collecting the estate it was necessary for the adminis-

trator to go to Arkansas, where he settled all accounts for the burial of deceased and expenses of his last sickness That "so far as he has been able to discover, the deceased has no relatives residing in Wyoming, but your administrator has been informed and now believes that the heirs of this estate reside in the state of Kansas and consist of one brother and nephews and neices." On June 14, 1919, the aforesaid petition for declaration of heirship was filed, being entitled: "In the Matter of James Black, Deceased. Petition for decree of heirship and order of distribution." It alleges in substance that the parents of said James Black, deceased, departed this life many years ago, in Woodruff County, Arkansas, leaving as their only children and heirs at law the said decedent and a daughter, Kizzie Black; that said James Black was never married, and died intestate near Sandiff, Cleburne County, in the State of Arkansas, on July 9, 1918, leaving as his sole heirs the said petitioners, descendants of his said sister, Kizzie Black. That petition was not verified but appears to have been signed by Shouse & Rowland as attorneys for David Hall, Bell B. Waters, and Dora F. Wheeler, three of the persons named as petitioners, and by Harry M. Woods as attorney for James Charles and J. K. Charles, the two other persons named as petitioners.

On August 1, 1919, an order was made in the matter of said estate, reciting that the cause came on to be heard upon the suggestion of the administrator that persons residing in the State of Arkansas had filed claims that they were the legal heirs at law of the said James Black, deceased; that the court having read said claims and the proofs attached thereto is in doubt as to the legality thereof and deems it for the best interests of said estate, and all persons concerned therewith, that further investigation thereof be made, and that it will be necessary for the administrator and his attorney to make a personal investigation of said claims. And it was thereby directed that the said administrator make further and complete investigation of claims

of heirship now on file in the court, to take such proceedings as he deems necessary to fully investigate said claims, including a trip to such points in the state of Arkansas and to other places as in his judgment may be necessary, taking with him the attorney for the estate, the expenses of such investigation to be borne by the estate. As will be shown when referring to the evidence, the administrator shortly after the date of said order, went to Arkansas as directed and while there stipulated through his attorney for the taking of certain depositions which appear to have been taken in his presence, and they were offered and received in evidence on the hearing.

On November 17, 1919, another order was made in the same matter, reciting that the cause came on to be heard upon the report of the administrator, showing that certain named persons had made claims of heirship to the estate, naming the said petitioners and the State of Wyoming, and fixing the 15th day of December, 1919, as the time for "hearing of all claims of heirship in this estate," and directing all persons interested to appear on said date and set forth their claims. It directed also the mailing of the order by registered mail to all persons "appearing of record and claiming heirship," that a copy be forwarded to the Attorney General of this state, and that "the notice be published for four consecutive weeks in the Basin Republican."

There is no proof in the record of the publishing of said last mentioned order or the serving of any notice of it. An unofficial copy of the entries on the appearance docket has been furnished which might be made part of the record, if necessary, by proper authentication; but it contains no entry of the filing of any such proof. It would be material only upon a question to be discussed relating to the procedure in such cases prescribed by statute. So far as these plaintiffs in error are concerned they appeared in response to the order; the record showing that on December 17, 1919, the date on which the hearing was held, they filed a so-called amended petition, which was verified and stated somewhat

more in detail the claim of the petitioners as grand children of Kizzie Black, the alleged sister of the said decedent; but otherwise it contained no new matter. On said last mentioned date, also (Dec. 17, 1919) there was filed a petition of intervention by the attorney general of this state, alleging that the State was an interested party for the reason that if no heirs are found to whom the estate can be distributed, it will escheat and revert to the state. There seems to have been presented with said intervening petition an answer to the amended petition of the petitioners, alleging such appearance of the attorney general by leave of court and denying generally the claims of the petitioners as heirs of the said estate, and there is an order in the record allowing such intervention.

The order here complained of recites the following, under the title, "In the Matter of the Estate of James Black, Deceased:" "The above matter came on for trial on the 17th day of December, 1919, upon the petition for decree of heirship and order for distribution theretofore filed in said matter on the 14th day of June, 1919, by David Hall, Bell B. Waters, Dora F. Wheeler, James Charles and J. K. Charles, and the answer filed therein by W. L. Walls, Attorney General for the State of Wyoming, and the court having heard the evidence introduced on behalf of the petitioners and by W. L. Walls as Attorney General for the State of Wyoming, and C. A. Zaring, also for the State, and having heard the argument of counsel, the same was taken under advisement by the court."

That is followed by a statement of the court's findings, substantially as follows: That the said petitioners have failed to introduce sufficient proof to establish their heirship in said matter; that the said parties (naming the petitioners) and each and either of them, are not the next of kin and are not the heirs at law of the said James Black, deceased, and are not entitled to any share or portion of the said estate.

The greater part of the evidence in the case consisted of depositions of witnesses taken in August, 1919, at Augusta, Woodruff County, Arkansas, upon a stipulation between the attorneys for the said claimants and the attorney for said administrator and the estate. Some oral testimony was also introduced at the hearing on behalf of the petitioning claimants, and on behalf of the state as an intervening party. Neither the administrator nor his attorney are shown to have taken any part at the trial, though the administrator was called and examined as a witness by the State; and the only pleadings in the record here are the petition and amended petition of the claimants, the intervening petition of the State, its answer in the nature of a general denial of the claims of plaintiffs in error, and the reply of the claimants to said answer.

A motion for a new trial was duly filed and overruled, and the petition in error assigns as error: 1. That the court erred in overruling the motion for a new trial. 2. That the findings and judgment are contrary to law. 3. That the findings and judgment are contrary to the evidence. 4. That the findings and judgment are not sustained by sufficient evidence. 5. That the court erred in overruling the objections of plaintiffs in error to the introduction of testimony. 6. That the court erred in its findings and order as to the claims of plaintiffs in error. 7. That there are other errors manifest upon the record prejudicial to the plaintiffs in error. The motion for a new trial specified separately, among other grounds, certain rulings of the court excluding and admitting evidence over the objection of plaintiffs in error so that the exceptions to such rulings are properly presented here by the general assignment that the court erred in overruling said motion, an exception having been reserved to that ruling.

The cause has been submitted here upon briefs and oral argument, on one side by the attorneys representing the plaintiffs in error, and on the other by the attorney general representing the administrator and the State, who

are named as defendants in error. And the discussion has related principally to the sufficiency of the evidence to establish the alleged relationship of the plaintiffs in error to the decedent, and their claim on that ground that they are his heirs at law. The alleged fact that they are grandchildren and the sole surviving descendants of Kizzie Black, deceased, is not disputed in the evidence or the argument. But the alleged fact that their said grandmother was a sister of the decedent is disputed as well as that she was in any way related to him. The denial of that fact, however, is not based upon any direct evidence introduced by the State for the purpose of describing or identifying the family of which said James Black was a member, or disproving the alleged kinship between him and said Kizzie Black, for no such evidence was presented on the part of the State, and no evidence either by the administrator or the State tending to show the existence of other heirs or of any other person or persons claiming to be the heir or heirs of the decedent, except that the record contains an admission by counsel for plaintiffs in error that there were other families named Black living in the vicinity where the deceased had died.

But there was no offer or attempt to prove that he was related to any of those families. The evidence introduced by the state was for the purpose of showing facts which might tend to discredit the testimony presented by the claimants, as, for example, testimony describing the appearance of the decedent when living in Wyoming in the later years of his life, to discredit the testimony of a witness for claimants, who had testified that he had met and talked with the decedent about his affairs and family relations in Arkansas a few months before his death there. And the argument here against the claim and contention of the plaintiffs in error is based almost wholly upon the evidence submitted by them; the attorney general insisting that such evidence is totally insufficient to show the existence of any relationship between them and James Black,

the decedent. And it is argued as earnestly by counsel for plaintiffs in error that the evidence clearly establishes their alleged kinship and heirship and they contend further that since most of the evidence on the subject is in the form of depositions of witnesses who were not present at the hearing in the district court, and stands uncontradicted, this court is as well able to pass upon its credibility and sufficiency as the trial court and should do so without giving any controlling or presumptive effect to the findings of that court upon such proof.

But, without considering the question of the sufficiency of the evidence to sustain the courts' finding and order, we think the case should be remanded for another hearing, first, on the ground of serious defects in the procedure throwing much doubt, in our opinion, upon the jurisdiction of the district court to determine the question of heirship in the proceeding then before it; and, second, because of uncertainty upon some points in the evidence which we believe might have been, and can yet be made clear, or, at least, much less uncertain. The matter of the procedure will first be considered.

Two separate and independent proceedings are provided for in the probate code wherein the question of heirship may be determined: 1. Upon the petition of a person claiming to be an heir of the deceased, or entitled to distribution in whole or in part of his estate. Comp. Stat. 1920, §§ 6979-6982. 2. Upon the petition of the executor or administrator, at the time and in connection with the final settlement of the estate. Id. §§ 6974-6976. See Oxarart's Est., 78 Cal. 109, 20 Pac. 367. Provision is also made in said Code for an order of *partial* distribution upon petition of an heir, devisee or legatee (Id. §§ 6970-6973); and in that proceeding in California, under a like provision, a decree determining heirship may also be made, as held by the California decisions. Jessup's Est., 81 Cal. 436, 21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594. The contrary, however, is held in Montana. In re Fleming's

Est., 38 Mont. 57, 98 Pac. 648. But this is not a proceeding for partial distribution, and it was not brought under the provisions of sections 6970-6973. Nor was the order in question here made upon the petition of the administrator for distribution, or in connection with a hearing for the final settlement of the estate. Indeed, it does not appear that the administrator had filed his final account or a petition for distribution, or that the estate was ready for final settlement. On the contrary the order itself recites that the hearing was had upon the petition of plaintiffs in error filed on June 14, 1919.

This proceeding instituted by said petition of plaintiffs in error was evidently intended to be brought, and must be considered as having been brought under the provisions of sections 6979 to 6981, Comp. Stat. 1920. The provisions of those sections, including section 6982, were all contained originally in a single section, as a part of the Code of Probate Procedure enacted by the first state legislature. Laws 1890-91, Ch. 70, Sub. Ch. 18, Sec. 10. That Code, as is well known, was adopted from the California Code upon the subject, and the provisions of the above named sections, originally section 10 of sub-chapter 18 aforesaid, were and are found in section 1664 of said California code. Some of the California provisions in that section, to which we may refer, were omitted from our statute, the omitted parts relating to particulars of the procedure after the acquiring of jurisdiction by the court. The separation of the original single section into several sections was the work of the commission which prepared the Revised Statutes of 1899, and the provision will be considered, for the purpose of interpretation, as though now contained in one section, in the form as originally enacted, though for convenient reference the numbered sections of the latest compilation (1920) will usually be cited.

Section 6982, found at the end of the original section, is not material upon the question of procedure we are now proposing to consider, since that provides merely that

nothing contained in the three preceding sections shall exclude the right upon final distribution of any estate to contest the question of heirship, title or interest in the estate, where the same shall not have been litigated under the provisions of said last three preceding sections, but that where such questions shall have been so litigated, "the determination thereof as therein provided shall be conclusive in the distribution of the estate." It is provided in the said last three preceding sections (6979, 6980, 6981) substantially as follows:

That any person claiming to be an heir of decedent or entitled to distribution of his estate in whole or in part, may, "*after the expiration of one year* from the issuing of letters testamentary or of administration," file a petition in the matter of such estate, praying the court to ascertain and declare the rights of all persons to said estate and all interests therein, and to whom distribution thereof shall be made. Section 6979. That thereupon the court or judge shall make an order directing service of notice to all persons interested in the estate to show cause, at a day certain, in which notice shall be set forth the name of the decedent, the name of the executor or administrator, a description of the real estate of which decedent died seized or possessed, so far as known, and the names of all persons who may have appeared in the course of the administration claiming an interest in said estate, "as the court or judge may direct, * * * and requiring all said persons and all persons * * * claiming any interest in the estate * * *, at the time and place in said order specified, to prepare and exhibit, 'as hereinafter provided,' their respective claims of heirship, ownership, or interest in said estate, * * * which notice shall be served in the same manner as a summons in a civil action, *upon proof of which service, by affidavit or otherwise, to the satisfaction of the court, the court shall thereupon acquire jurisdiction* to ascertain and determine the heirship, ownership and interest of all parties in and to the property of said decedent,

and such determination shall be final and conclusive in the administration of said estate   *   *   *   *   *The court shall enter an order or decree establishing proof of the service of such notice."* Section 6980. That *all persons appearing* within the time limited *shall file their appearance* in person or through their authorized attorney, *entry of which appearance shall be made* in the minutes of the court, and the *court shall, after expiration of the time limited for such appearance, enter an order adjudging the default of all persons not appearing as aforesaid.* Section 6981. We have italicized certain words of the statute to bring out more clearly the chief steps in the prescribed procedure.

The California statute, immediately following the provisions of our section 6981 aforesaid, contains provisions omitted from our statute to the effect that any person so appearing shall file his complaint setting forth the facts of his claim or kinship or interest, and serve a copy thereof upon each of the parties or attorneys who have entered an appearance if residing within the county, and if not then such service to be made upon the clerk of court for them; that such other parties are allowed 20 days to plead thereto; and thereafter such proceedings shall be had as in case of an ordinary civil action; that the party filing the original petition, if he file a complaint, and if not, the first party filing such complaint shall thereafter be treated as plaintiff in said proceeding, and all others so appearing as defendants. And it provides specifically for taking evidence orally or by deposition. Under such provisions of the California Statute, the one instituting the proceeding by filing the petition mentioned in our Section 6979 is also to file afterwards a complaint setting forth the facts of his claim, as we understand that statute; and, as held in that state, each party so appearing is an independent actor and, in effect, a plaintiff as against all other parties whose claims are adverse. 2 Church's Prob. Law, 2nd Ed., pp. 1779, 1781. It is said: "The fact that a person is styled a 'defendant' in the title of the pleadings in such an action,

does not fix his status in the proceeding.'' Id. 1779, citing: Estate of Kasson, 141 Cal. 33, 40, 74 Pac. 436.

It seems to have been deemed best, when enacting such probate code in this state, to omit the last above mentioned provisions of the parent statute, and leave the proceeding in those particulars to be governed by the provisions of the civil code relating to ordinary civil actions, so far as any provision therefor might be necessary; the probate code containing a general provision to that effect. Under our statute, therefore, it may be that the person commencing the proceeding by filing the petition specified in section 6979, is not required to file thereafter another petition or complaint if his petition contains a statement of all the facts constituting his claim, sufficient to entitle it to consideration as a pleading of those matters, and that it may stand as the petition of a plaintiff for the twofold purpose of instituting the proceeding so as to confer jurisdiction to determine the matter, and stating as a pleading the facts of such party's claim of heirship or right to distribution.

The administrator of the estate in question was appointed and letters of administration issued on July 16, 1918. This proceeding was instituted by the filing of the petition of the plaintiffs in error on June 14, 1919, more than a month *before* the expiration of one year from the issuing of letters of administration, and therefore before the time had arrived under the statute to authorize the filing of such a petition. And there is no showing in the record or otherwise of a compliance or attempted compliance with the provisions above mentioned as to notice, or any other provision prescribing the procedure to follow the filing of the petition, unless the order of November 17, 1919, fixing a time for hearing and directing notice thereof, is to be considered as an attempt to comply in part with such provisions. Some of said provisions are clearly jurisdictional, and it is indeed so expressed in the statute.

It is held in California that the court acquires no jurisdiction of the proceeding where the petition of the heir or alleged heir is prematurely filed, that is to say, *before* instead of after the expiration of one year from the issuing of letters. Smith v. Westerfield, 88 Cal. 374, 26 Pac. 206; Estate of Sutro, 143 Cal. 487, 77 Pac. 402; Sheid's Estate, 122 Cal. 528, 55 Pac. 328; 1 Ross Prob. Law & Proc. Sec. 538; 2 Church's Prob. Law & Proc. 1778, 1779. It is said in the work last cited on the authority of Smith v. Westerfield, supra, and Estate of Strong, 119 Cal. 663, 666, 51 Pac. 1078, that whenever the acts of the court in probate, though a court of general jurisdiction, are without the limits of the special jurisdiction conferred, they are nugatory, and have no binding effect, ''even upon those who have invoked its authority.''

Discussing the question in Smith v. Westerfield, supra, the court held that although the superior court was a court of general jurisdiction, yet in the exercise of its probate powers, its jurisdiction was limited and special, and that unless authorized by statute, said court had no power by virtue of its general jurisdiction to entertain a proceeding to determine heirship as a part of the proceeding in probate for the administration and settlement of the estate of a decedent; and further specifically held that said court was without jurisdiction in the proceeding then being reviewed for the reason that the petition had been filed before the expiration of the time provided in the statute. In Sheid's Estate, supra, it was said that if a petition then being considered ''be regarded as one to determine heirship, as it was filed before the expiration of one year from the issuing of letters of administration, it was premature, and conferred no authority upon the court to entertain it.'' And in Sutro's Estate, supra, it was said:

''In Smith v. Westerfield, 88 Cal. 374, 26 Pac. 206, it was very properly held that jurisdiction under section 1664 was never acquired by the superior court because the petition was filed within less than four months after the issu-

ance of the letters of administration, whereas no proceeding under the section can be inaugurated, and of course, no jurisdiction acquired, until the expiration of one year after the issuance of letters. What was said in the opinion about probate proceedings being 'statutory' was, of course, correct, and was naturally preliminary to the conclusion that there could be no jurisdiction of a 'petition' under section 1664 until after the expiration of the year.''

In another jurisdiction a petition of an alleged heir for distribution was held to have been properly dismissed for want of jurisdiction on the ground that it was filed before distribution could be compelled under the statute; though it was there held also that the court, at its discretion, might have retained the petition for hearing when the time should arrive therefor under the statute. Sinnott v. Kenaday, 12 App. Cas. D. C. 115.

The first of said California decisions was rendered in March, 1891, a little more than a month after the executive approval of our probate code, and it appears to be reasonable and sound and has been consistently followed in that state, unless the case of Estate of Walden, 168 Cal. 759, 145 Pac. 100 is to be regarded as stating a contrary rule as against one who has appeared in the proceeding without objecting to the jurisdiction. The reason, if any might be necessary, for the stated restriction upon the time for inaugurating the proceeding may be found, no doubt, in the provisions of the probate code allowing one year for the presentation of claims against the estate, and allowing the executor or administrator to proceed to make final settlement *only after* the expiration of that period. The California decisions upon the subject also show the necessity of at least a substantial compliance with certain of the above mentioned statutory provisions as to notice to confer jurisdiction upon the court in a proceeding of this kind under the probate code.

In the case last above quoted from (Sutro's Estate) the court was considering a contention that the lower court was without jurisdiction for the reason that the order adjudging default of persons not appearing was insufficient. The court held that the provision of the statute for that particular order was directory merely, since jurisdiction was acquired under the statute by its express provisions before the time prescribed for the making of that order, and indicated the procedure necessary to jurisdiction. Thus, after stating that an order was made directing service of notice and also an order ''establishing proof of the service of said notice,'' as provided by the statute, the court said:

''Up to this point in the proceeding, the provisions of the section were, beyond question, fully complied with. The section, however, provides that 'after the expiration of the time limited for appearing the court shall enter an order adjudging the default of all persons for not appearing who shall not have appeared as aforesaid,' and an order of that character was made  *  *  *  the sufficiency of which is disputed.  *  *  *  In a previous part of the section it is expressly provided that upon proof of the service of the notice to the satisfaction of the court 'the court shall thereupon acquire jurisdiction to ascertain and determine the heirship, ownership and interest of all parties in and to the property of said decedent.' *Jurisdiction having thus attached* (italics ours) the provisions as to the time of future steps in the proceeding are merely directory, or not to be considered as conditions precedent, and are not of the essence of the proceeding.''

Apparently recognizing the importance of the provisions for notice, other California decisions recite the fact that notice was directed by order of the court and that an order was entered establishing proof of the service of such notice. In Smith v. Westerfield, supra, the court said that

at the time of filing the petition the court made an order for notice to be given requiring all persons claiming to be interested in said estate to appear on a date mentioned and exhibit their claims, and directing personal service at least thirty days before the time fixed for appearance, and further, that "service of said notice be made on all said persons claiming interest in said estate by publication thereof in   *   *   *   and that said publication be made at least once a week for" etc.  And the court said that afterwards the lower court made its order and decree stating that "due and lawful notice   *   *   *   has been given and that the same is established of record, and that this decree be entered in the minutes of this court."   And see In re Blythe's Estate, 110 Cal. 231, 42 Pac. 643; 1 Ross Probate Law & Proc. § 538; 2 id. pp. 1354-1361.

The case of Estate of Walden, supra, decided in 1914, was a proceeding instituted under the corresponding provisions of the California Statute by the filing of a petition of an alleged heir.  Other alleged heirs also appeared.  The petitioner and certain defendants were adjudged to be the heirs and other defendants appealed.  The report of the case does not not show when the petition was filed with respect to the date of the issuance of letters.  But it is said in the opinion that "the jurisdiction of the court is assailed by appellants who question the regularity of every step in the proceeding leading up to the publication of notice."  And the court disposed of that matter by saying: "But since the appellants themselves appeared in the action, and filed a pleading in which they asked judgment that they were entitled to have the estate distributed to them, they are in no position to make these objections, even if it be assumed that the points urged are meritorious in themselves.  Voluntary appearance is equivalent to personal service.  'Where the defendant appears and asks some relief which can only be granted on the hypothesis that the court has jurisdiction, it is a submission to the jurisdiction as completely as if he had been regularly

served with process.'  Whether other possible claimants
were properly brought before the court is no concern of
these appellants.  They presented their claim to the court
for adjudication as fully as the plaintiff did hers, and hav-
ing invoked the jurisdiction, they are bound by its exer-
cise, whether the result be favorable or adverse.''

If that decision was intended to hold that as against
such appellants the court would have jurisdiction even
though the petition inaugurating the proceeding was pre-
maturely filed, then it is in direct conflict with Smith v.
Westerfield, supra, for the appellants in that case had filed
the petition instituting the proceedings, and on the ground
that the petition having been prematurely filed the court
was held to have been without jurisdiction, and the order
appealed from was reversed and the court directed to dis-
miss the petition and all subsequent proceedings there-
under.  However, that case is not directly overruled in
the Walden Estate case, nor is it cited or referred to in
any way in the opinion in the latter case.  We think,
therefore, that we should not assume that it was intended
to overrule it; or that the same point was involved.  The
grounds stated by the court for its decision seem to indi-
cate that the points urged in opposition to jurisdiction had
reference to jurisdiction of the person and not jurisdiction
of the subject matter.

The doubt in our mind as to jurisdiction in this case
arises from the fact of the filing of an amended petition by
plaintiffs in error after the expiration of the one year
period mentioned in section 6979.  While that petition is
not mentioned in the order appealed from, it might, per-
haps, be considered as inadvertently omitted from the
order in reciting the petition upon which the hearing was
had.  If that amended petition may properly be considered
as the pleading inaugurating the proceeding, then possibly
the plaintiffs in error would be in no position to question
the jurisdiction for the failure to comply with the statu-

tory provisions as to notice. They do not attack the jurisdiction. The question is suggested by this court. But we shall not decide it. We do not doubt our power or duty in a case of this kind to remand the cause for another hearing in a proceeding not presenting a doubtful question of jurisdiction. The order of November 17, 1919, may have been intended as a compliance with the statute as to notice, though that is not clear. It fails in several particulars to comply with the statute. But that might not be material if the court's jurisdiction to entertain the proceeding at all was free from doubt.

There is, as above stated, a further ground upon which we think the cause should be remanded for another hearing, regardless of error appearing in the record. In returning the cause to afford an opportunity for the taking of additional evidence, we do not pass upon or consider the question of the sufficiency of the evidence now in the record to sustain the finding of the district court.

"Some courts hold" in a case of this kind, "that the court or, in a case of a reference, the master or referee should allow the claimants to present their respective claims as best they can, but others hold that where the court is not fully satisfied with the proof it should investigate on its own motion, and still others that the court in its discretion may order a further search or the taking of additional testimony." 18 C. J. 875. And that the court should have the discretion to investigate or order a further search or the taking of additional testimony seems to us reasonable, especially where the result otherwise might be an escheat. It is said in Fischer v. Sklenar, 101 Neb. 553, 568; 163 N. W. 861, 867.

"It may be that the county courts of this state have not fully realized heretofore the exceeding importance and gravity of the proceedings in such courts ascertaining the persons who are the heirs or next of kin of a decedent

whose estate is being administered. No such finding should
be made without competent sworn testimony. The record
should show the names of the witnesses examined, and the
fact of such examination, and, *if the court is not fully sat-
isfied with the proof, it should investigate on its own mo-
tion."*

In Stevens's Estate, 38 Pa. Co. Ct. 614, the court said:
"The auditing judge in this case, not being satisfied that
the exceptant was the sole next of kin of the decedent, very
properly halted distribution and ordered a further search.
This is clearly within its rights. * * * Indeed it would
be an anomaly to hold that distribution should be made
where the judge is not satisfied that all the next of kin
are before him." In Flanagan's Estate, 207 Pa. St. 490,
56 Atl. 1062, the court say: "The necessity for the taking
of additional testimony was a matter wholly within the
discretion of the court, which had to decide the issue
raised." And in the case of Peterson's Estate, 22 N. Dak.
480, 134 N. W. 751, the appellate court, without finding
error, ordered the remand of the cause for retrial, the evi-
dence being held insufficient, the court saying: "But it
appears that proof may on retrial be made of the right of
some of appellants to share in this estate. Accordingly we
order that the judgment of the district court be reversed
and vacated * * * and we remand this action * * *
for further proceedings as to the claims of appellants."
* * *.

The district court, in this case, seems to have exercised
the discretion to investigate on its own motion by the
order of August 1, 1919, directing an investigation of these
claims by the administrator. And it appears from the
second report of the administrator, filed on April 5, 1920,
after the said hearing in the district court, and brought
into the record here by stipulation, that the depositions in-
troduced in evidence on said hearing were taken upon the
suggestion of the administrator when acting under said
order.

The duty of making an investigation of the claims of alleged heirs and taking or causing the taking of depositions was no part of the ordinary duty of the administrator. In that capacity he stands indifferent as between contesting heirs, and is not a party adverse in interest to persons who allege that they are heirs. In re Friedman's Est., 176 Cal. 226, 168 Pac. 21. As stated in the brief of appellants, the administrator appears to have assumed a neutral attitude upon the hearing, and it may be understood that such was his attitude when the depositions were taken, and that he acted in that matter solely as the court's appointed representative under the order aforesaid. We think, therefore, that the depositions may be regarded as having been taken by the court's directions, and as though taken upon a commission issued for that purpose.

We shall not undertake to point out specifically, except in one particular, and perhaps another, the additional evidence which we think might be procured. One of the principal witnesses in support of the claim of heirship of the plaintiffs in error was F. A. Charles, whose wife was the daughter of said Kizzie Black. His testimony is in the depositions taken as aforesaid. He testified to having known James Black, then a boy about 15 years old, in 1865 or 1866, in Augusta, Arkansas, and that he was his wife's mother's brother. He testified also to having met said James Black about the month of January, 1918, at Kensett Station in Arkansas, who then told him that he had been living in Wyoming, had a ranch there, and had bought a place on the railroad above Edgemont, in Arkansas, and was staying there. He testified that he knew the man he so talked with to be James Black from "his asking me about his sister and his folks." With reference to that testimony it is strenuously argued by the Attorney General that the description given by said witness on cross examination of the man he met and talked with differs materially from the description in the evidence of the James Black who lived in Wyoming, and died at or near Edge-

mont, in Arkansas, in the spring of 1918. But the only description of the personal appearance of James Black given by other witnesses is of his appearance before leaving Wyoming for Arkansas, when, as testified, he wore a very black beard, five or six inches long. One of the alleged differences between the man the witness testified he had talked with, and that given by the witnesses, relates to the beard; the witness stating that the man he talked with and whom he identified as James Black appeared at the time he talked with him as unshaven, but with a beard growth of two or three weeks. There are other differences, but this seems to be most strongly relied upon.

There was no attempt to show a description of the appearance of James Black after he had arrived in Arkansas by any other witness, though it is apparent that it was possible to have taken the evidence of a number of competent and disinterested witnesses upon that matter. David Hall, one of the claimants, when examined as a witness at the time of taking of said depositions, testified that a man was pointed out to him as James Black at Edgemont, before the alleged death of the decedent. But he was not asked to describe the man so pointed out to him. Mr. Hime, the administrator, having described the appearance of James Black when in Wyoming, was asked by counsel for the state if his description "tallied" with that given by those describing to him the one who had died in Arkansas. The question was not answered, for it was objected to and the objection sustained. It appears that a temporary administrator had been appointed in Arkansas, who turned over to Mr. Hime, the administrator here, certain personal effects of the decedent, and it is evident that the testimony of the temporary administrator might have been procured, as well as others who could have given a perfect description of the appearance, apparent age, etc., of the man who died in Arkansas. There is, in fact, no evidence in this case, except hearsay, that the James Black who lived in Wyoming and whose property is being adminis-

tered in the district court of Big Horn County is the same man known as James Black who died at or near Edgemont in Arkansas at the time stated. And that hearsay evidence is merely the testimony of Mr. Hime that from his inquiries in Arkansas he became satisfied that the man who had died there was the James Black whom he knew in Wyoming and who left property here, and the testimony of Hall, that he heard that James Black had died at or near Edgemont, and possibly the testimony of F. A. Charles to the same effect.

We think that counsel should take the proper procedure to obtain additional evidence as above suggested, and if not the court should cause a commission to be issued for such purpose.

The said witness Charles also testified that when he knew James Black as a boy, his wife's mother, Kizzie Black, looked to be about twenty five years older than her said brother, but that he could not state exactly how much older she was. That is our understanding of his testimony in that respect. The Attorney General has construed that testimony, however, as stating that Kizzie Black "looked to be about twenty five years *old*" at that time, and uses that fact to show the impossibility or unreasonableness of other facts in the testimony. But in our present view of the testimony of that witness, we cannot agree with that construction. The question that was propounded to the witness was: "How much older, if any, was Kizzie Black, Pate, your wife's mother, than James Black?" His answer was: "I couldn't tell exactly, but Mrs. Pate looked to be about, I should think, about twenty five years or maybe more." That answer was immediately followed by this question: "However, you can't state with certainty how much older she was?" He answered: "No, sir, I can't." It seems clear that the witness as well as counsel had reference to the difference in the ages of the two rather than to the age alone of Kizzie Black. But if there is any uncertainty about this, it is a matter that might

and should be made clear by additional evidence if possible to be secured.

Some questions are raised with reference to rulings upon the admission and exclusion of testimony and the principle to be applied in determining the question of the sufficiency of the evidence to establish the claims of plaintiffs in error. And we think it proper to state our views concerning those questions as a possible aid in another hearing of the matter, which we assume may occur in some authorized manner in said probate proceeding. It is contended that the court erred in striking out a part of an answer of Dr. Harris, who testified orally at the hearing. It appears that said witness, a physician and surgeon, had performed an operation upon James Black, the alleged decedent, in Basin, Big Horn County, in this state, in 1916, and that after that the latter reported to the witness from time to time, and told the witness, in the fall of 1917, that he had a chance to and was going to sell out, that it was too cold here for him to get out and rustle, and he was going where it was not so cold all the time. The witness was then asked this question: "Did he indicate to you where he was going?" An objection to the question as incompetent, irrelevant and immaterial was overruled and the witness gave this answer: "I asked him where he was going and he said he was going down back in the hills of Arkansas, or back in the hills in the Ozarks. I do not know whether he said Arkansas or Missouri, but he said the Ozarks, and look around, where he had spent his boyhood, and that he wanted to see it, he was getting old and wanted to get a little piece of land and settle down." The Attorney General moved to strike out the answer on the ground that it was incompetent, irrelevant and immaterial because containing the conjecture of the witness, or conclusion from an alleged conversation, and not being the language of the deceased. The court ordered that all of the answer after the expression "he was going to the Ozarks" or after the

last work "Ozarks" be stricken out, and an exception was reserved to the ruling.

We think that the answer was not objectionable upon either of the grounds stated, nor on the ground now urged that it was not responsive to the question. The ruling was error. But it appears that as to several objections to testimony rulings were reserved, and at the close of all of the evidence, the following is noted: "All motions and objections to which rulings were reserved by the court are overruled and the exceptions allowed: also all objections made by the state to testimony relating to conversations had with the decedent James Black are overruled and the state allowed an exception to each and every ruling." From that it might appear, perhaps, that the court intended to change the ruling upon the objection to the answer aforesaid and allow the entire answer to remain a part of the evidence. We need not, however, attempt to decide as to the effect of that statement in the record, since the cause is to be remanded regardless of error.

During the taking of the deposition of the witness Charles he was asked this question: "Did or did you not hear your wife's mother, while she lived with you, discuss her family and members of the family?" That was objected to at the time of the taking of the testimony and the witness answered: "Yes, sir." At the hearing the Attorney General moved that the answer be stricken out and the objection was sustained, to which ruling an exception was reserved by the petitioners. We think that ruling was error. Mrs. Pate, the mother of the wife of the witness, to whom he referred, had been dead several years at the time of the taking of the testimony and the death of the decedent James Black; and since there was testimony given by the witness Charles and another witness connecting said Mrs. Kizzie Black Pate with the Black family, of which a James Black was a member as a younger brother, we think her declarations upon the subject, as against the objections made at the time, were admissible. 2 Wigmore

on Evidence, §§ 1420-1424, 1480, et seq.   Wise v. Wynn,
59 Miss. 588, 42 Am. Rep. 381; Alexander v. Chamberlin,
1 Thomp. & Cook (N. Y.) 600; Byers v. Wallace, 87 Tex.
503; 28 S. W. 1056, 29 S. W. 760, 18 C. J. 873, § 128.   But
the error may not have been prejudicial for no offer of
proof was made and the witness testified concerning the
various members of the family of his wife's mother, but
without stating whether such testimony was from his own
knowledge or from what he had heard Kizzie Black say
about the matter.   The same point is urged against an
alleged ruling by the court upon a question propounded
to the witness Hall and his answer.   That witness was
asked if prior to the death of his grandmother, he had
heard her talk about her family, and his answer was in the
affirmative, and that he had heard her speak about having
a brother James Black, who was with them "here in Wood-
ruff County."   It does not, however, appear from the record
that there was any objection to that question or any ruling
excluding the answer.

As we shall not pass upon the sufficiency of the evidence,
it is unnecessary to consider the contention respecting the
effect, on appeal, of the finding of the trial court upon evi-
dence consisting of depositions.   The contention of plain-
tiffs in error as to burden of proof is based upon the fact
that the State, alleging an escheat, is the only party con-
testing their claims, and the legal presumption that every
decedent has left heirs capable of inheriting, placing the
burden upon the state, in order to sustain an escheat, to
rebut that presumption by proving that decedent left no
heirs.   But the State made no attempt upon the trial to
show the non-existence of legal heirs of the decedent, nor
did it ask by petition for leave to intervene or its answer
for a decree to that effect, and no such decree or order was
made, so far as this record shows.   And the right of the
State to an order for an escheat in this statutory proceed-
ing in the matter of the administration of the decedent's
estate, even if prayed for, would be at least doubtful, in

view of the statute providing the procedure to be followed for the recovery of escheated property, viz., the filing of an information in the district court of the proper county by the county and prosecuting attorney of that county, or the Attorney General, alleging the grounds on which the recovery is claimed. Comp. Stat. 1920, § 3912. Nor does the presumption of the existence of legal heirs have quite the effect claimed for it by the contention aforesaid. For while "the law presumes" as said in Stennett v. Stennett, 174 Ia. 431, 156 N. W. 406, "that an intestate has left heirs capable of succeeding to his estate, there is no presumption as to who they are." The same proposition is stated by the Supreme Court of California. In re Friedman's Estate, 178 Cal. 27, 172 Pac. 140. And by the Supreme Court of Washington. In re Miller's Estate, 87 Wash. 69, 151 Pac. 105. The case last cited was an appeal from a decree of escheat in a proceeding for the purpose of escheating the estate of a decedent, wherein it appeared that an order had been entered by the court in the course of administration of the decedent's estate, directing the administrator to advertise for heirs, and that in response to such advertisement a large number of persons claimed the estate as next of kin of the decedent, "and in antagonism to each other." Discussing the legal presumption as to the existence of heirs, the court said:

"From this rule, the appellants seem to infer that any evidence, however slight, tending in any degree to show a possible kinship between the decedent and a claimant, is sufficient to establish heirship as against the state and defeat an escheat. It is true that the burden in the first instance rests upon the state to overcome by competent evidence the presumption that the decedent left heirs capable of inheritance. But this presumption is not so broad, nor the burden so onerous, as counsel seem to assume. While there is a presumption that there is somewhere some one next of kin to every decedent, there is no pre-

sumption that any particular persons are his next of kin, and that his next of kin are ascertainable. The state's burden is met when, in addition to proof of the actual death, non-marriage, and intestacy of the propositus, it has been shown that after diligent search and inquiry, the state has been unable to find that he left ascertainable heirs. Any other rule would render an escheat impossible by making the presumption that there are next of kin of every decedent an irrefragable presumption. When the state has shown these things, it has established prima facie the escheat of the property. The burden is then upon a particular claimant to prove by the ordinary rules and competent evidence that he is in fact the next of kin. This is not shifting the burden of proof, but is a mere progress of proof, directed to an independent issue, the affirmative of which is in the nature of the case at all times upon the claimant of the property. He must prove his title." And see State v. Williams, 99 Miss. 293, 54 So. 951, where the state's proof in an escheat proceeding was held insufficient, and Note to that case in Ann. Cas. 1913 E 383, 384. In the Washington case above quoted from, the court referred in the opinion to the fact that there had been an advertisement for heirs responded to by a flood of antagonistic claimants, indicating that the inquiry and search for heirs had been sufficient to sustain the claim of escheat in the absence of satisfactory proof of the kinship of either claimant; the court saying as to the proof of the claimants that none of them "had been able to furnish proof passing mere conjecture that he is in fact of any kin to the decedent."

The claims of plaintiffs in error here do not appear to have been filed in response to any advertisement for heirs, nor does there appear to have been any such general search and inquiry as that shown in the Washington case. And we think it might be presumed from the record, if material and necessary, that these claims were filed as the result

of the knowledge or information of the claimants of the death of the decedent. We are not of the opinion that in determining the question of the sufficiency of the evidence in a case of this kind, the legal presumption should be given no effect, for, as said in State v. Williams, supra, that presumption ''is one of the strongest presumptions known to law, because the presumption itself runs with the usual current of nature,'' and ''the state has no purpose to take away from any of its citizens any property to which such citizen may be justly entitled.'' But it does not remove the necessity that those claiming to be heirs shall establish their alleged kinship by reasonably satisfactory evidence.

For the reasons stated, the order complained of by this proceeding in error will be reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion. No costs will be taxed for briefs, and it will be directed that the other costs in the case, including the ordinary taxable costs for bill of exceptions and transcript be paid out of the funds of the said state; and that the district court enter an order to that effect.

                              Reversed and Remanded.

Blume and Kimball, JJ., concur.

NOTE—See under (1) Appeal and Error 4 C. J. Sec. 3096; (2) Depositions 18 C. J. Sec. 61; (3, 4, 5, and 7) Descent and Distribution 18 C. J. Sec. 126-128; (5) Evidence 22 C. J. Secs. 226, 229, 236.