State ex rel. E. H. Nall, Land Commissioners, v. J. W.
Williams et al.

[54 South. 951.]

1. Escheat. *Required proof. Presumptions. Survivorship of heirs.*

In an action of escheat the state must recover if. at all upon the
strength of its own title and not the weakness of that of the
defendant.

2. Presumptions.

The presumption of law that a person dying intestate has left heirs
capable of inheriting his estate is one of the strongest presumptions
known to law, because the presumption itself runs with the usual
current of nature.

3. Same.

This presumption can only be overcome by positive proof of the want
of persons capable of taking the estate under the laws of descent
and distribution.

Appeal from the chancery court of Warren county.
Hon. E. N. Thomas, Chancellor.
This was a proceeding by the state of Mississippi on
the relation of E. H. Nall, land commissioner, against
J. W. Williams et al. to escheat land. From a decree
dismissing the petition, the state appeals.
The facts are fully stated in the opinion of the court.

*McKnight & McKnight,* for appellant.

The proposition of law, which the appellant was re-
quired to meet, is this: ''The law presumes that a dece-
dent left heirs capable of inheriting, and it is incum-
bent upon the state to rebut this presumption by proof.''
Escheats, 16 Cyc. 555.
The burden upon appellant, on this proposition, being
that of proving a negative, the rule of law is as follows:
''The party whose contention requires proof of a nega-

tive fact has the burden of evidence to prove that fact. In deciding, however, what *quantum* of evidence shall be deemed sufficient, the practical limitations on the proof imposed by the nature of the subject-matter or the relative situation of the parties will be considered, and the burden of evidence will be sustained by proof which renders probable the existence of the negative fact; circumstantial evidence being sufficient and nothing in the nature of a demonstration being required. "16 Cyc. 936, and authorities there cited. And, "to establish a negative the same decree of proof is not ordinarily necessary as in cases where proof of an affirmative is required. Generally a negative fact is sufficiently proved *prima facie* by proving some affirmative fact or state of facts inconsistent with the affirmative of the proposition to be negatived and therefore raising a presumption that the negative is true." 17 Cyc. 780, and authorities there cited.

Positive evidence of the failure of heirs is not neces sary; 16 Cyc., p. 656, note 80, and authorities there cited.

We respectfully submit, that the evidence in this case, when weighed by any rule and especially by the rule as to the proof of a negative, which we submit is applicable here, shows and establishes, sufficiently and clearly, the failure of heirs of Miles P. Bristol, Jr.

Under Code of 1857, page 448, art. 96, it was proper for the court to allow farm to be cultivated until final settlement of estate.

J. W. Williams, appellee, took an order at the January term, 1868, approving the report of the commissioners to appraise rents of the lands as the property of Miles P. Bristol, Jr.

The Statute of Limitations which ran against the state from 1857 was repealed by Act of January 24, 1877, page 82, so as not to apply to the state, thus the bar did not attach. J. W. Williams was discharged as administrator on November 23, 1880.

For the reasons above stated, we respectfully submit that the court below erred in its findings, from the evidence, upon which its decree was based; and therefore erred in dismissing the bill or petition for escheat and in not decreeing in favor of the appellant, and that the decree below should be reversed and a decree here for appellant.

*Dabney & Dabney, Catchings & Catchings* and *McCabe & McCabe,* for appellee.

The law as to escheats in force in 1864 or 1865 when Miles P. Bristol, Jr., died, is article 1 of section 1, on page 187, of the Code of 1857, and is as follows:

"If any person shall die intestate, who was seized of, or held, either in possession or in right, at the time of his death, real or personal property, or money or choses in action, in this state, whether such person was a citizen of the state or not, and leave no heir capable of inheriting, or taking the same, all such property, real and personal shall escheat to the state of Mississippi. But if such deceased person left a husband or wife surviving, and capable of holding the same, his property shall not escheat to the state, but the surviving husband or wife shall in such case be the lawful heir, and take the same as such."

It will be seen from this statute that by its own terms the state becomes vested with the title to all property or money or choses in action of which an intestate was seized or held either in possession or in right at the time of his death, where no heir was left capable of inheriting or taking the same. The title begins, it will be seen, at the time of the death of the intestate.

Whatever title, therefore, came to the appellant, came at the moment of the death of Miles P. Bristol, Jr., in 1865.

It appears, therefore, that forty-two years passed by

before the appellant propounded its claim to this prop-
erty upon the theory that it had acquired title in 1865
to it.

The right of the sovereign to escheat property is not
contractual. It is purely statutory. Hence when prop-
erty is claimed as escheated the state must have satis-
factory proof in support of every condition which must
exist in order to confer title upon it.

While in this state, unfortunately, the Statute of Lim-
itations no longer runs against the state, yet inasmuch
as a very long delay on the part of the state in asserting
rights claimed to belong to it may result in great wrong
to confiding citizens who are wholly ignorant that the
state possesses a claim which it could assert, courts will
look critically upon all proof produced upon which it is
sought to acquire for itself property which it claims as
escheated.

The golden words of Judge Calhoun, in closing the
opinion of this court in the case of *Warren County* v.
*Lamkin,* 93 Miss. 166, should be given their fullest ap-
plication in the case now before this court. Judge Cal-
houn said:

"By this doctrine of sovereignty, in its application
to the rights of owners of land, many worthy and con-
fiding families of poor people have been stripped of
house and home and compelled to begin life anew. We
reiterate that this must not be done, unless it is necessi-
tated by the strictest construction of the law in favor
of the occupant."

Before considering the value of the testimony offered
by the appellant in support of its contention that Miles
P. Bristol, Jr., died without heirs, we invite the atten-
tion of the court to section 2186, vol. 3 of Elliott on
Evidence: "Sec. 2186. Presumptions.—The presump-
tion of law is that a person dying intestate has left heirs
capable of succeeding to his estate. The presumption

that the estate of such person is transmitted to others by the law of descent, is so strong that it must be overcome by positive proof of the want of persons capable of taking the estate under the laws of descent and distribution. And where the proof shows that an intestate died without issue or lineal heirs, the presumption of collateral heirs prevails. But it is held that proof of the fact of there being no known heirs might raise a presumption of the failure of the inheritable blood; but such proof should be direct and positive, shown to be founded upon inquiry, advertisements, personal family knowledge of the declarations of those from whom the property descended. It has been doubted, if mere hearsay reputation of the failure of heirs will overcome the legal presumption. And the presumption was held to be so conclusive that it was not overcome by proof of the fact that neighbors and acquaintances of an intestate who had known him for many years, did not know that there was in fact persons capable of taking his estate under the law. The law presumes that every child is the offspring of a lawful union of its parents, and in the absence of any negative evidence no further proof of marriage is necessary."

What is here said contains all the law and the prophets upon the proposition discussed. It will be seen that the distinguished author declares that the presumption of law that a person dying intestate has left heirs capable of succeeding to his estate is so strong that it can only be overcome by positive proof that there are no persons capable of taking under the laws of descent and distribution.

It will also be observed that he states that where the proof shows that an intestate died without issue or lineal heirs the presumption of collateral heirs still prevails.

He also states that while proof of the fact that there are no known heirs, might raise a presumption of the

failure of inheritable blood, yet such proof must be direct and positive.

He also states that such proof must be shown to be founded upon inquiry, advertisements, personal family knowledge, or the declarations of those from whom the property descended.

It is also to be noted that he states, and in this the authority supports him, that it has been doubted if mere hearsay reputation of the failure of heirs will overcome the legal presumption. He also states that this legal presumption is so conclusive that it will not be overcome by proof of the fact that neighbors and acquaintances of the intestate, who have known him for many years, did not know that there were in fact persons capable of taking his estate under the law.

Argued orally by *Theodore McKnight,* for appellant, and *M. Dabney,* for appellee.

MAYES, C. J., delivered the opinion of the court.

In this case we feel safe in saying that the record shows, almost beyond dispute, that Miles P. Bristol, Jr., died some time prior to December, 1865; that at the time of his death he was the owner of the land in controversy by inheritance from his father; that when he died he was intestate. From 1865 to the present time J. W. Williams and those claiming through him have claimed to be the owners of this property, have held open, notorious, continuous, adverse possession, exercising all the acts of ownership, and making many and very valuable improvements on the land. In 1907, some forty-two years after the death of the owner of the land, the state undertakes by this proceeding to escheat this property. The proceeding is founded upon section 1878 of the Code of 1906, and the ground alleged as cause for the escheat is that Miles P. Bristol, Jr., died intestate and owning the property, leaving no heir capable of inheriting from

him. The tract of land consists of about three hundred and fifty acres lying in Warren county.

In this contest for the ownership of this property, it may be well to remark that the state must recover, if at all, on the strength of its own title, and not the weakness of that of appellees. It may further be remarked that it is most unusual, not to say unnatural, that there shall live a person who does not have some heir, living at the time of his death, capable of inheriting his property. For this reason, the presumption of law that a person dying intestate has left heirs capable of inheriting his estate is one of the strongest presumptions known to law, because the presumption itself runs with the usual current of nature. In considering this case let us keep these principles in mind, and let us also keep in view the fact that the state has no purpose to take away from any of its citizens any property to which such citizen may be justly entitled.

What are the main facts on which the state relies in order to have this property declared forfeited as escheated property? The owner died in 1864 or 1865. One of the appellees, J. W. Williams, was the administrator of the estate of the owner, and so continued until his final discharge in 1880. In making the application for the grant of letters of administration, Williams swore that Miles P. Bristol, Jr., had no relatives so far as he knew. The lands were assessed for taxes to the heirs of Miles P. Bristol until in the year 1883, at which time they were assessed to J. W. Williams. From 1864 or 1865, from the death of Miles P. Bristol, Jr., the owner, down to this time, no one has undertaken to oust appellees from the land in question as heirs of the owner. This puts the case about as it appears on the state's testimony. In truth, the idea of the state's counsel seems to be that because the owner died some forty-two years before the suit was begun, and because in all that time no one has appeared as an heir undertaking to oust ap-

pellees, this fact, coupled with the other circumstances set out above, makes out a case strong enough to overcome the legal presumption, that the owner died having heirs capable of inheriting. As we will undertake to show a little later, it cannot be said that no one had ever appeared claiming to be an heir, for some testimony in the record shows otherwise. The appellees show that J. W. Williams and those claiming through him have held the property as their own from 1864 or 1865 to date. For many years they have paid the taxes on the property and placed valuable improvements on same. Mr. Lease says that some time in 1880 there was a party, so he was told, laying claim to the property as heir of the owner, but abandoned the claim because he stated that there were so many heirs that the property would not be worth a controversy. H. F. Simrall, a lawyer, testifies that about 1880 some one called on him to talk to him about this property. He does not remember whether such person claimed to be an heir or not; but the person called to talk over the Bristol matter, and because they could not agree the person left.

Another important fact to be kept in mind is that for forty-two years the state has not moved in this matter, but has let the time pass when it would have been possible to find living persons who knew the family and its history, who knew where they came from, and who were their relatives. During this time the state has allowed appellees to occupy the land as their own, and to make improvements thereon, and to pay the taxes. These things in themselves may not be conclusive against the state; but in this character of proceeding they are to be considered, along with the other testimony, as showing that the reason why those in authority at the date of the death of the owner did not proceed to claim the estate for the state at the time was because it was known that there were heirs. It is also shown that the mother of the owner came from about Baton Rouge, Louisiana,

and yet no inquiry was instituted there to find out if there were relatives, no advertisement was made for the heirs, and no investigation or inquiry instituted beyond the immediate locality in which the death occurred. ·

Before the state can succeed, it was incumbent upon it to make all the inquiries, investigations, and advertisements. In section 2186 of Elliott on Evidence will be found the best statement of the rule on the subject of the legal presumption of heirs. It is that the "presumption of law is that a person dying intestate has left heirs capable of succeeding to his estate. This presumption that the estate of such person is transmitted to others by the law of descent is so strong, that it can only be overcome by positive proof of the want of persons capable of taking the estate under the laws of descent and distribution. . . . . The presumption was held to be so conclusive that it was not overcome by proof of the fact that neighbors and acquaintances of an intestate who had known him for many years, did not know that there were in fact persons capable of taking his estate under the law." Again the same authority says that "it is held that proof of the fact of there being no known heirs might raise a presumption of the failure of the inheritable blood; but such proof should be direct and positive, shown to be founded upon inquiry, advertisement, personal family knowledge, or the declarations of those from whom the property descended."

When the proof offered by the state is measured by the requirements of the rule quoted above, it fails to measure up to it in almost every particular. In the case of *University of North Carolina* v. *Harrison,* 90 N. C. 385, it is said: "The party claiming must prevail by the strength of his own title, not by the weakness of that of his adversary. What degree of evidence is necessary, then, to make out any presumption of probability whatever, sufficient in the absence of opposing testimony to show the state's title by reason of defect of

heirs, or to furnish any ground for a verdict in favor of
the people? The ordinary rational, as well as legal, pre-
sumption as to every person is that he must have some
relations, and consequently some heirs, however remote,
and whether known to him or not. From the natural
laws of human descent and relationship, this must be so;
and the necessary presumption must be that every citi-
zen dying leaves some one entitled to claim as his heir,
however remote, unless one or the other of the only two
exceptions known to our law (alienage and illegitimacy)
should intervene. . . . Proof of the fact of there
being no known heirs of the deceased may well raise a
presumption that for some unknown reason the inherita-
ble blood had failed, provided such proof be direct and
positive, founded upon inquiry, advertisements, personal
family knowledge, or the actual declaration of the per-
son last seized, or of those from whom his title de-
scended. But can he, with propriety, go further than
this, and permit the natural and general presumption
of kindred to be combated at all by proof of mere hear-
say reputation?"

If it be said that the degree of proof required by these
authorities is so high that it can rarely be made, the
answer is to be found in the statement that the reason
for the rule grows out of the fact that a knowledge of
human affairs teaches that a case rarely exists in fact
where any person dies without near or remote heirs cap-
able of inheriting. In the case of *Harvey* v. *Thornton,*
14 Ill. 217, it is stated that "it is difficult to imagine a
case, unless it be that of a bastard, dying intestate and
without issue, where an intestate does not leave kindred
on whom the law casts his estate." We thus see that
the standard of proof required to show that there are
no heirs is fixed high, because such an event is unnatural,
improbable, and almost impossible. We can conceive of
no case where the proof on the part of the state neces-
sary to overcome the legal presumption in favor of heir-

ship should be more positive and clear than in this case. The state does not move in this matter until, from the lapse of time, it may well be assumed that those who could have cleared up the situation have all passed into the Great Beyond. Various property rights have been acquired by innocent persons, and the land has been paying its obligated tax to the state. The state has acquiesced in a condition which acknowledged that there were heirs, else it would have proceeded with its escheat proceedings soon after the death of the owner. The state has not merely remained quiescent as to a vacant tract of land, but as to an occupied tract for forty-two years. It has seen the land cultivated and improved for all that time, and all these things may be weighed, under the facts of this case, in the scale of proof as tending to show that the reason for this was a knowledge, at the time, that the owner had heirs. This principle of law is recognized in the case of *Blomquest* v. *Gardner,* 95 Miss. 309, 48 South. 724, where the court says that, with the witnesses all dead who could clear up the facts of that case by the lapse of a long time, the facts should be established by the most undoubted proof before a deed should be overthrown by proffered proof that it was never signed.

No added weight or force can be given to the contentions in this case because the proceedings are instituted by the state. When the state is a litigant in its own tribunals, it expects and shall receive the same measure of right that it establishes for its humblest citizen. As was said in the case of *Warren County* v. *Lamkin,* 93 Miss. 166, 46 South. 513, 22 L. R. A. (N. S.) 920: "By this doctrine of sovereignty, in its application to the rights of owners of land, many worthy and confiding families of poor people have been stripped of house and home and compelled to begin life anew. We reiterate that this must not be done, unless it is necessitated by the strictest construction of the law in favor of the occupant." *Affirmed.*