STATE of Missouri ex rel. Harold L. HEN-
RY, Prosecuting Attorney of Howell Coun-
ty, Missouri, Respondent,

v.

Roy MALHMAN and Bessie Malhman or Bes-
sie Mendenhall, and the Unknown Heirs of
Levenia Peters, Appellants.

No. 50485.

Supreme Court of Missouri,

Division No. 2.

Jan. 11, 1965.

**2**

Harold L. Henry, H. D. Green, Richard D. Moore, West Plains, for plaintiff-respondent.

William C. Scott, West Plains, for appellants.

PRITCHARD, Commissioner.

The state of Missouri at the relation of the Prosecuting Attorney of Howell County, Missouri, was successful in its action below in which it was adjudged that a parcel of land in Mountain View, Missouri, had escheated to the state upon the death of the owner, Levenia Peters, who died in 1923. See Chapter 470. (This and other statutory references herein are to RSMo 1959, V.A.M.S.) Appellants were brought into the case as possessors of the land (terre-tenants, § 470.060). Appellants appeared and contested the state's right to an escheat of the land as they had a statu-torily conferred right to do under § 470.090. See also 30 C.J.S. Escheat § 13, p. 1177, and § 470.160 providing that any party who shall have appeared to any proceedings shall have the right to prosecute an appeal upon any judgment. Appellants denied all the allegations of the state as contained in the information except that they were in possession of the land. Appellants did not claim the title to the land to be in themselves. Title to real estate is not in the strict sense involved between these parties as set forth in appellants' statement in their brief concerning the jurisdiction of this court. This court, however, has jurisdiction by reason of the fact that the state of Missouri is a party. Mo.Const.1945, Art. V, § 3, V.A.M.S.

The sole question on this appeal is whether the state had sufficient evidence to show that the owner of the lands involved died intestate leaving no heirs or representatives capable of inheriting the same. § 470.010.

There was no dispute that the property was acquired by Mrs. Levenia Peters as grantee from W. A. Clark and Lettie C. Clark, his wife, as grantors, in a warranty deed dated April 30, 1921. It was agreed that Mrs. Peters died about 1923. Further evidence adduced on behalf of the state, appellants having introduced none, is as follows: John Duncan testified that he was born and raised in Mountain View, and lived there 70 years. Levenia Peters died before 1925, and he, being in the undertaking business, handled her funeral. The husband of Levenia Peters died before she died. Mr. Duncan did not know of any heirs of Mrs. Peters, and he did not know of anyone who ever claimed that he owned the estate.

Mrs. Clyde Ethel Walker testified by deposition that she had lived in Mountain View since 1891. She was associated with the Postal Department there for 31 years, 23 years of which were spent as Postmistress. She resigned as Postmistress on May 30, 1956. She knew Levenia Peters during the time that Mrs. Peters and her

husband lived in Mountain View. Mrs. Peters' husband preceded her in death. Mrs. Peters died in 1922 or 1923. The only relative she ever heard of was a nephew of one of them (Mr. or Mrs. Peters). The nephew was present at both funerals and didn't want the property—he wasn't interested in it. She did not know the name of the nephew or where he lived.

A. W. Landis, a licensed, practicing attorney at law in West Plains, Missouri, was also an abstractor there. He checked the record of the property here involved and learned that there had been no transfer thereof since it was deeded to Levenia Peters—title is still in her name. His further testimony was as follows:

"Q Now, A. W., back several years ago and before this suit was instigated, did you have occasion to attempt to locate heirs of Levenia Peters?

"A I attempted to locate the owners of the land, and Mr. Rinehart over—

MR. SCOTT: I am going to object to the testimony of this witness and to statements made by any other person than Levenia Peters unless it is shown first that the declarant was a member of the family of Levenia Peters and thus possessed of the knowledge of her relationship and same was made prior to instigation of the suit, and declarant is unavailable as a witness.

THE COURT: Well, so far, overruled. If I understand it, this is an investigation he made back a number of years before the filing of this suit?

MR. SCOTT: I am objecting to remarks he may want to make concerning Mr. Rinehart.

"Q (By Mr. Moore) What did you start to say?

"A We tried to find the owners of this property because I was executor of Jay's will, and—

THE COURT: Jay Rinehart was executor of the will?

MR. MOORE: Jay was the administrator of the estate of Levenia Peters.

THE COURT: Explain it to us, will you?

THE WITNESS: Well, I don't know, Jay paid taxes on the property a number of years, as I recall, part of the time, as administrator, and part of the time as trustee, it shows on those old checkbooks. Jay Rinehart, as executor was anxious to find out, to ascertain, who owned the property. In the course of the thing, we found this deed to Levenia Peters, and there's some letters, old letters, in regard to that, and later, there was something that indicated William A. Clark owned it.

"Q (By Mr. Moore) Did you attempt to locate any of these persons?

"A I started in St. Louis, Missouri,— I looked through the directory, and I found seven W. A. Clarks, William A. Clarks, and wrote each of them a letter.

"Q You have never been able to hear from any of them?

"A I heard from some of them, but they're not the William A. Clark, of course. When I'd get the letter, they'd say they are not the William A. Clark that ever owned any real estate in Mountain View."

■■ We have found no case in this state, and none has been cited to us, directly upon the subject of the quantum of proof necessary to sustain a judgment of escheat. We have, however, adverted to general principles in cases and authority from other jurisdictions. Among these principles is the statement in the annotation of 40 L.Ed. 692 that "The burden of proof is on the state, and without proper proof that the lands are subject to escheat, it cannot succeed, even as against a mere occupant." See also Louisville School Board v. King, 107 S.W. 247, 32 Ky.Law

Rep. 687, 15 L.R.A.,N.S., 379; Hammond's, Lessee v. Inloes, 4 Md. 138; People v. Cutting, 3 Johns. (N.Y.) 1; University of North Carolina v. Harrison, 90 N.C. 385; In Re Smith's Estate, 179 Wash. 287, 37 P. 2d 588; and 30 C.J.S. Escheat § 16, p. 1179. It is also a rule that escheats and forfeitures are not favored in law, In Re McManis Estate, 94 Colo. 546, 31 P.2d 912, 913 [1]; Taylor v. Benham, 5 How. (U.S.) 233, 270, 12 L.Ed. 130, 148; and 19 Am.Jur. Escheat, § 14, p. 387, where it is said also that any doubt as to whether property is subject to escheat is resolved against the state. See also Dutton v. Donahue, 44 Wyo. 52, 8 P.2d 90, 79 A.L.R. 1355.

■ In Ann.Cas.1913E, p. 383, it is stated, "The authorities generally are in accord with the view adopted in the reported case (State v. Williams, 99 Miss. 293, 54 So. 951), that in a proceeding to establish escheat a presumption of law is raised in favor of the existence of some person who is capable of inheriting the estate of the decedent." (Parenthetical citation added.) See also American Mortg. Co. of Scotland v. Tennille, 87 Ga. 28, 13 S.E. 158, 12 L.R.A. 529, 530; Peterkin's, Lessee v. Inloes, 4 Md. 175; In Re Wakefield's Estate, 161 Or. 330, 87 P.2d 794, 89 P.2d 592; In Re Smith's Estate, supra; and 19 Am.Jur. Escheat, § 41, p. 407. In the reported case of State v. Williams, supra (Ann.Cas., 1913E, p. 381), the evidence was that one Miles P. Bristol, Jr., died intestate owning the lands in controversy some time prior to 1865. 42 years afterward, the state undertook proceedings to escheat the property on the alleged ground that decedent died intestate, owning the property, and leaving no heir capable of inheriting from him. The administrator of decedent's estate, in making application for grant of letters of administration, swore that decedent had no relatives as far as he knew. The lands were assessed for taxes to the heirs of decedent until 1883, at which time they were assessed to J. W. Williams, the administrator. From 1864 or 1865 to the time of suit, no one undertook to oust appellees from the land as heirs of the owner. The court denied escheat, and said, "In section 2186 of Elliott on Evidence will be found the best statement of the rule on the subject of the legal presumption of heirs. It is that the 'presumption of law is that a person dying intestate has left heirs capable of succeeding to his estate. This presumption that the estate of such person is transmitted to others by the law of descent is so strong, that it can only be overcome by positive proof of the want of persons capable of taking the estate under the laws of descent and distribution * * *. The presumption was held to be so conclusive that it was not overcome by proof of the fact that neighbors and acquaintances of an intestate who had known him for many years, did not know that there were in fact persons capable of taking his estate under the law.' Again the same authority says that 'it is held that proof of the fact of there being no known heirs might raise a presumption of the failure of the inheritable blood; *but such proof should be direct and positive, shown to be founded upon inquiry, advertisement, personal family knowledge, or the declarations of those from whom the property descended.*'" (Emphasis added.)

There is one early Missouri case cited to us concerning a finding of heirship, Daudt v. Musick, 9 Mo.App. 169. That was an action in ejectment, and plaintiffs' right to recover depended upon whether their mother, who was the second wife of one George Stephenson, was his heir because (under the applicable law of descent at the time) he had no children or their descendants, father, mother, brother, or sister, or their descendants. The evidence showed that Stephenson's age when he died was 70 to 87 years. He came from Virginia, and had lived for nearly half a century continuously in the Florissant valley. No relative was ever examined, nor was there any testimony from anyone who had ever known his family, or who knew anything

whatever of his father and mother. Blume, a neighbor for 5 years, had never heard of brothers or sisters. Reiners, a stepdaughter's husband, never heard of brothers or sisters. The strongest testimony was that of the executor who had known the deceased for 40 years. He testified that the nearest relative Stephenson ever told him of was a brother of his first wife, and he had never heard of brothers or sisters of deceased. He never had any conversation with deceased on the subject of his family, or as to whether he had brothers or sisters. The court said, 9 Mo.App. 173, "All this, we think, amounts to nothing. It does not tend to prove that the father and mother of Stephenson had no descendants except himself, or that those descendants left no descendants. There is here no evidence of general reports in the family, or of statements of deceased in the matter. The objection to the evidence is, not that it is hearsay, but that it is not even hearsay; the witnesses had heard nothing of the matter, and knew absolutely nothing about it. For all that appears, the deceased may have nephews and nieces, or even brothers and sisters. The fact that he did not talk of them to his neighbors has absolutely no significance. He left home as a young man, and died where he had lived, a thousand miles from the home of his youth, at an extreme old age. The witnesses had never heard him speak of his family at all, and many say that they know nothing about it, and that he may have brothers and sisters and nephews and nieces for all they know. * * * Here are no declarations as to pedigree or relationship. The State in which deceased was born is known; it does not appear that his exact birth-place was unknown, or that there was no clue to better, and perhaps satisfactory, evidence as to his relatives."

■■ The state cites Robinson et al. v. State et al., Tex.Civ.App., 109 S.W.2d 559, upon the proposition, as was there held, that the phrase "having no heirs" means no *known* heirs, and no heirs who can be ascertained by the exercise of reasonable diligence. The words of our escheat statute, § 470.010, "leaving no heirs or representatives", may likewise be said to mean "no *known* heirs." There is, however, a burden of proof imposed upon the state to show that there are no *known* heirs (a negative fact, see State v. Goldberg's Unknown Heirs, et al., 113 Tenn. 298, 86 S.W. 717). In State v. Williams, supra, it was stated that "such proof should be direct and positive, shown to be founded upon inquiry, advertisement, personal family knowledge, or the declarations of those from whom the property descended." See also the case of In Re Smith's Estate, supra, loc. cit. 37 P.2d 591 [2], where it was said, "The state's burden is met when, in addition to proof of the actual death, nonmarriage, and intestacy of the propositus, it has been shown that after diligent search and inquiry the state has been unable to find that he left ascertainable heirs. Any other rule would render an escheat impossible by making the presumption that there are next of kin to every intent an irrefragable presumption. When the state has shown these things it has established prima facie the escheat of the property." Suggestive of the sources which should be covered by an investigation is the list in the case of In Re Crawford Estate, 12 Pa.Dist. & Co.R.2d 709, 8 Fiduciary 169: Residents of household where decedent resided; friends and neighbors; labor union membership; places of employment; social, fraternal, or beneficial organizations; insurance records; church membership; school records; social security records; Veterans' Administration or Military Service records; Naturalization records, if deceased was not native born; and other sources of information as the circumstances may suggest.

■■ In this case, the testimony of witness John Duncan was only that he did not know of any heirs of Mrs. Peters, and did not know of anyone who ever claimed that he owned the estate. Mrs. Clyde

**6**

Ethel Walker added merely that the only relative she ever heard of was a nephew of either Mr. or Mrs. Peters. There was no evidence of general reports in the family. There was no evidence that the deceased did or did not make any statement in regard to her family. It does not appear whether the origin or birthplace of deceased was unknown. Nothing indicates whether or not deceased left personal effects or documents which would shed light upon the question of her relatives, if any. There was no evidence of any inquiry made with respect to any of these matters. Although witness A. W. Landis testified that he made inquiry in the St. Louis area of persons by the name of W. A. Clark as to whether they had any interest in the property, with negative results, there was no showing that any such persons had any family connection with deceased. Absent that showing, it would be less than diligent merely to inquire with respect to names appearing as grantors in Mrs. Peters' deed. The evidence falls short in supporting the testimony from two witnesses that there were no known heirs absent any reasonable and diligent inquiry with respect thereto. The state has waited about 35 years to begin this suit at a time when evidence may have become unavailable and memories dim concerning the relatives of Mrs. Peters. Although that is not conclusive against the state, it is a factor for consideration. State v. Williams, supra.

We rule that the state has failed to adduce sufficient proof to rebut the presumption that Mrs. Peters left heirs capable of inheriting from her. Daudt v. Musick, supra; State v. Williams, supra; and In Re Smith's Estate, supra.

The judgment is reversed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD C., is adopted as the opinion of the Court.

STORCKMAN, P. J., and EAGER, J., concur.

FINCH, J., not participating because not a member of the court when cause was submitted.