**MEDICAL WEST BUILDING CORPORATION, a Corporation, Plaintiff (Appellant),**

v.

**E. L. ZOERNIG & COMPANY, a Corporation, Defendant (Respondent).**

No. 53316.

Supreme Court of Missouri, Division No. 1.

May 12, 1969.

Lashly, Caruthers, Rava, Hyndman & Rutherford, Rexford H. Caruthers, Jack Egel, St. Louis, Attorneys for appellant.

Dubail, Judge & Kilker, William C. Maier, St. Louis, Attorneys for respondent.

PAUL E. VARDEMAN, Special Judge.

This action for damages for breach of lease is before us for the second time. After a jury verdict for plaintiff in the amount of $17,220 damages, plus $3616.20 interest, the trial court set aside the verdict and entered judgment for defendant. Plaintiff appealed, and we reversed and remanded with directions to the trial court to consider and act upon defendant's alternative motion for new trial. Medical West Building Corp. v. E. L. Zoernig & Co., Mo., 414 S.W.2d 287, 294.

After remand, the trial court sustained defendant's alternative motion for new trial on the grounds that the court had erroneously refused an instruction tendered by defendant submitting defendant's theory that "Zoernig's quitting was not voluntary." From that action of the trial court, plaintiff has again appealed.

All references to the parties are as they appeared in the trial court. The detailed facts giving rise to this controversy are set out at length in our earlier opinion at 414 S.W.2d 287. Only those facts essential to our disposition of this appeal are repeated here.

The plaintiff corporation owned and operated an office building known as Medical West. The parties had entered into a written lease whereby defendant leased premises in the building for a term of five years at a monthly rental of $400 per month. The lease was modified February 3, 1958, to provide: "If at any time during the term of the present lease or the renewal thereof as aforesaid, the employment of Richard J. Zoernig as building manager is *terminated by the corporation* the lessee shall have the right to cancel the remaining term of said lease without penalty * * *" provided notice was given plaintiff within ninety days after termination of Zoernig's employment.

This modification of the lease resulted from negotiations for the purchase of a majority of the stock ownership of the plaintiff corporation by O. S. Rudman and his wife from E. L. Zoernig, Richard Zoernig and others. The Zoernigs had originally been the owners of a controlling majority of the stock of the Medical West Building Corporation. They sold their stock to the Rudmans on February 3, 1958, at which time control of the plaintiff company passed to Rudman who became president. Plaintiff continued the employment of Richard Zoernig as manager of the Medical West Building for one year beginning February 15, 1958, under a written contract.

Many of the tenants in the Medical West Building were stockholders in the plaintiff corporation. In March of 1958 controversy arose over Richard Zoernig's management of the building. The tenants expressed to Rudman (now president of plaintiff corporation) dissatisfaction with Richard Zoernig's management. There was in addition controversy over a policy instituted by Rudman and opposed by the tenants as well as Richard Zoernig to charge a fee for use of the parking facilities. For more on that dispute see: Bryan v. Medical West Building Corporation, Mo.App., 345 S.W.2d 389.

On March 25, 1958, a meeting of building tenants and management of the plaintiff corporation was held. Various financial

difficulties of plaintiff were discussed as well as the tenants' complaints about the building management. The day following that meeting Richard Zoernig met with Rudman to discuss building management problems. Subsequent to that meeting Zoernig ceased to function as building manager. He was replaced as manager by one Oxenhandler.

This meeting of March 26, 1958, was attended by Rudman and Oxenhandler, on behalf of plaintiff, and Richard Zoernig and Mr. Charles Judge, an attorney, for the Zoernig interests. Statements made and action taken at that meeting by Rudman and Zoernig are the basis for the dispute as to whether Zoernig's termination as building manager was voluntary or not.

Defendant relying on the lease took the position that plaintiff had terminated Richard Zoernig as building manager and after giving notice to plaintiff vacated the premises as of September 1, 1958. This litigation followed.

The petition stated a claim for breach of contract, the damage sought by plaintiff being the balance due under the lease agreement. Defendant pleaded that Zoernig's employment had been terminated by plaintiff, and that defendant Zoernig Company had exercised its right of cancellation by reason of the privilege granted it in the lease in the event Zoernig was terminated as building manager. The answer also raised an equitable defense of estoppel in the alleged failure of plaintiff to advise defendant that it opposed defendant's lease cancellation.

The issue submitted to the jury at the trial was whether or not Richard Zoernig voluntarily terminated his position with plaintiff. Defendant's instruction called for a verdict in its favor if the jury believed plaintiff terminated Zoernig's employment. The jury resolved this issue for the plaintiff by its verdict.

The trial court upon consideration of defendant's equitable defense of estoppel held

that because plaintiff failed to respond to a letter from Zoernig's attorney, Judge, dated June 4, 1958, notifying it of the cancellation of the lease, it was estopped to deny the validity of the cancellation. The trial court found for the defendant on the equitable defense; set aside the jury verdict on the ground that no jury issue was raised on the question of the voluntariness of Zoernig's leaving, and entered a judgment for defendant.

As indicated earlier we reversed the action of the trial court on the first appeal for the reason that the facts in evidence did not establish the equitable defense of estoppel, and held the trial court erred in entering judgment on that theory for defendant. We remanded the cause to afford the trial court the opportunity of ruling on defendant's alternative motion for new trial. The trial court on consideration of that motion sustained it, granted defendant a new trial, and plaintiff has again appealed.

The trial court in its order granting defendant a new trial stated its reason to be: "The failure of the trial court to permit the submission of the defense theory that Zoernig's quitting was not voluntary, but as a result of plaintiff's action when the trial court refused the following instruction of defendant:

" 'Your verdict must be for defendant if you believe: First, that plaintiff encouraged or influenced Richard Zoernig to give up his position as manager of plaintiff's building, and

Second, that Richard Zoernig did so as a result of such encouragement or influence.' "

The legal issue presented by this appeal is whether or not defendant was entitled to the refused instruction. If it was then the trial court properly granted it a new trial.

The appellant argues that the instruction was properly refused originally by the trial court because the instruction contained an error of law in that it assumed that mere

encouragement or influence to Zoernig to terminate his employment made such leaving an involuntary act without reference to other circumstances in evidence; that the instruction was not supported by any evidence; and further that the issue of Zoernig's leaving, that is, whether it was voluntary or involuntary, was fully covered by other instructions given in the case by the court.

Defendant's argument is to the contrary of that asserted by plaintiff, and, additionally, it asserts that the trial court in granting the new trial was exercising judicial discretion and under the rule of deference we should not disturb that action.

The disputed issue at the trial was whether the plaintiff terminated Zoernig's employment as building manager or whether Zoernig voluntarily quit. It was advantageous to the plaintiff to show that it did not terminate him; that he left voluntarily, thus extending defendant's liability under the lease. Defendant, on the other hand, desired to show that plaintiff terminated Zoernig, thereby giving it the right to cancel. All of the evidence at the trial except that relating to damages was keyed to this factual dispute.

The issue was submitted to the jury in these verdict-directing instructions which were given by the court:

"INSTRUCTION NO. 3

Your verdict must be for plaintiff if you believe that Richard J. Zoernig voluntarily terminated his position as building manager of the Medical West Building Corporation.

"INSTRUCTION NO. 4

Your verdict must be for defendant if you believe that plaintiff terminated Richard Zoernig's employment as manager of plaintiff's building."

On these instructions the jury found for the plaintiff, thus finding that Zoernig left voluntarily.

■ In order for the trial court to be correct in its ruling on the motion for new trial, it must of course appear that it erroneously refused the instruction in the first instance. If it committed no error in refusing the offered instruction, then it had no legal right to grant a new trial on account of the refusal thereof. Schipper v. Brashear Truck Company, Mo., 132 S.W. 2d 993, 125 A.L.R. 674.

We first consider plaintiff's argument that the refused instruction did not correctly state the law in that mere encouragement or influence of Zoernig by plaintiff to quit was not a defense.

■ An employer can by its conduct force an employee to quit so that termination of employment by the employee may not be voluntary in the ordinary sense of being of the employee's volition. As was said in Kilgore v. Industrial Commission, Mo.App., 337 S.W.2d 91, 99, 90 A.L.R.2d 825: " * * * the mere fact that an employee leaves his job does not necessarily mean that the act is voluntary. Extraneous factors and surrounding circumstances must be taken into account and where *pressure of circumstances* compels termination by the employee, then the termination is involuntary." (Emphasis added.) Likewise, the pressures must be " * * * so compelling that a reasonably prudent person would be justified in giving up employment." Citizens Bank of Shelbyville v. Industrial Commission, Mo.App., 428 S.W.2d 895, 899.

In Bussman Manufacturing Co. v. Industrial Commission, Mo.App., 335 S.W.2d 456, it was stated, 1. c. 460:

" * * * when the pressure of real, not imaginary, substantial, not trifling, reasonable, not whimsical, circumstances compel the decision to leave employment, the decision may be said to be voluntary in the sense that the worker has willed it, but may equally be said to be involuntary because outward pressures have compelled it * * *"

Significant in the above cited cases is the use by the court of the word "pressure" as the criterion used to determine whether the employee's quitting was voluntary or not. Webster's New International Dictionary, Second Edition, defines "pressure" as synonymous with "squeeze, constraint, force." The proper legal test therefore to be applied in determining whether Zoernig's quitting was the result of plaintiff's action was whether it resulted from pressure, constraint, or force exerted by plaintiff.

In view of the argument advanced by defendant that our earlier opinion constituted "the law of the case" we point out that our earlier expression at page 294 simply expressed our view that such a theory of involuntary termination by pressure, constraint, or force was a correct legal concept, not that it was a correct theory in this case, nor that the refused instruction properly set it forth. We expressly declined to pass on that issue because it was not then before us as it is now.

While we agree with the general legal concept that an employer may by his conduct either directly or indirectly force an employee to resign, without his resignation being voluntary; that legal concept must be properly submitted to the jury via the court's instructions. Defendant's refused instruction here did not do that. The words "encouraged or influenced" without more were insufficient. They did not establish a basis to guide the jury to the correct result. The difficulty is that they were indefinite insofar as they failed to establish the quantum of "encouragement or influence" necessary to make the termination the result of pressure and thereby involuntary. Under this instruction any amount of encouragement, however slight, would have constituted a defense to plaintiff's claim. The words "encouragement" and "influence" are not synonymous with "pressure, force or constraint."

An employer might encourage and influence an employee to quit the employment without that action necessarily constituting the exertion of pressure or force on the employee, compelling him to quit. Thus, even though the jury could have found under the refused instruction that Zoernig terminated as a result of encouragement or influence by plaintiff, that finding alone would not compel the further finding that Zoernig's quitting was involuntary or caused by plaintiff so as to defeat plaintiff's claim. We think that the refused instruction was correctly refused by the trial judge in the first instance because it was not a correct statement of the law.

Another problem with the refused instruction is that it was not supported by the evidence. Defendant's theory that Richard Zoernig's employment as building manager was terminated by plaintiff was an affirmative defense and as such defendant was obliged to plead and prove it. Civil Rule 55.10, V.A.M.R.; Gennari v. Prudential Ins. Co. of America, Mo., 335 S.W.2d 55.

Four of the five witnesses at the trial were at the March 26, 1958, meeting in Richard Zoernig's office at which Zoernig's termination as building manager was first discussed. At that meeting the tenants' complaints as expressed by them the preceding evening were discussed. According to Zoernig and Judge, Rudman told Zoernig at that meeting, "I believe your usefulness as building manager has ended." To which Zoernig replied, "Do you want me to quit?" Rudman said, "I prefer that you make that decision yourself." At a subsequent meeting on March 29 at which Zoernig was not present, Oxenhandler asked Judge why Zoernig didn't give up the building management, and Judge said, "If you give him a little time * * * he may * * * be willing to step down on the basis of E. L. Zoernig's moving out of the building."

A proposed letter of resignation prepared by plaintiff was tendered to Zoernig for his signature but he failed to sign it. The

plaintiff directed a letter to Zoernig acknowledging receipt of some keys and making the self-serving statement that he had quit. This letter was disputed by Judge's letter of April 15 disputing the allegation that Zoernig's employment had terminated.

Richard Zoernig's testimony failed to show he was fired or that any pressure was applied by plaintiff to force him out as manager. His testimony with respect to his refusal to sign the resignation indicated that he retained the resignation letter a few days while "debating the whole situation."

The best that can be said to support defendant's claim of pressure to compel Zoernig's resignation is that after the meeting of March 26 Oxenhandler assumed the duties of building manager and Zoernig did nothing further along that line and there was an attitude of hostility among the tenants of the building toward him. This attitude of the tenants however was not the result of any action on the part of the plaintiff, rather it was an attitude that had developed over a considerable period of time when Zoernig's management of the building was controversial.

With respect to the assumption of the manager's duties by Oxenhandler, and the cessation of those duties by Zoernig, the evidence is that Zoernig had other employment as a manager at a different building as well as an interest in the defendant's financial business. He made no claim against plaintiff for money that might be due him for services as building manager after March, 1958. He simply "faded away." His conduct belied defendant's claim that he quit as building manager as a result of pressure by plaintiff.

It may be true that plaintiff desired Zoernig out as building manager and that he was glad to see him go and that by his conduct he did nothing to encourage him to stay, but we do not believe that the evidence fairly considered disclosed any conduct on the part of the plaintiff constituting pressure or force on Zoernig which resulted in his termination being involuntary.

We hold, therefore, that the refused instruction was properly refused because it was not only an erroneous statement of the law but was not supported by the evidence in the case. The sole issue was whether Zoernig's termination was voluntary or not. That issue was adequately submitted in Instructions 3 and 4 given by the Court.

Defendant also argues that the refused instruction was a proper converse and should have been given on that ground. We disagree. The court had already given one converse in Instruction No. 4. It properly framed the issues. Assuming arguendo that the refused instruction was a converse of plaintiff's verdict director, defendant was not entitled to two converse instructions. Murphy v. Land, Mo., 420 S.W.2d 505; M.A.I., Pages 249, 251 and 253. Furthermore, the refused instruction, if given, would have conflicted with Instruction No. 4, a practice prohibited in Morris v. Continental Casualty Company, Mo.App., 423 S.W.2d 42.

Finally, defendant argues that the action of the trial court in granting a new trial was an exercise of discretion with which we should not interfere based upon the well established rule of deference to the trial court in its sound exercise of discretion. This rule has no application here. The trial court did not grant the new trial on a discretionary ground. It granted it as specifically set out in its order upon the basis that it had committed legal error in refusing an instruction.

Defendant, in support of its argument relies on our opinion in Sam Snead School of Golf v. Anchor Casualty Co., Mo., 386 S.W.2d 412, where we did defer to the action of the trial judge in granting a new trial based upon a discretionary ground. In Snead the refused instruction upon which a new trial was granted was a cautionary instruction, the giving or refusal of which rested within the sound dis-

cretion of the trial judge. Here the refused instruction was not a cautionary one. The trial court's action was entirely a matter of law. The exercise of discretion was not involved. "There is no discretion as to the law of a case." Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 997; Sam Snead School of Golf v. Anchor Casualty Co., supra, 386 S.W.2d 1. c. 417.

The cause is reversed and remanded with directions to reinstate the verdict for plaintiff and enter judgment thereon.

HENLEY, P. J., and SEILER, J., concur.

STORCKMAN, J., not sitting.