**GREAT MIDWEST ENTERPRISES, INC., Appellant,**

v.

**George M. PRECHT, et al., Respondents.**

**No. WD 33668.**

Missouri Court of Appeals, Western District.

June 14, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 2, 1983.

Application to Transfer Denied Sept. 20, 1983.

---

| | |
|---|---:|
| Respondents are entitled to rent | $20,000.00 |
| Respondents are entitled to gas bill | 433.66 |
| | $20,433.66 |
| Net due respondents | $ 1,933.66. |

W. Dudley Leonard, Independence, for appellant.

Thomas A. Sweeny, William L. Hubbard, Kansas City, for respondents; Popham, Conway, Sweeny, Fremont & Bundschu, P.C., Kansas City, of counsel.

Before SOMERVILLE, C.J., and SHANGLER and PRITCHARD, JJ.

PRITCHARD, Judge.

The issue is whether appellant was entitled to terminate a restaurant lease because of respondents' alleged failure, in accordance with a provision of the contract, to comply with ordinances governing the number of parking spaces to be provided for the restaurant. Appellant also claimed, under the lease, to be entitled to the value of "rattleware", liquor and food inventory at its cost; to a return of its $10,000.00 security deposit; for loss of profit due to respondents' failure to install a beer system within 30 days of appellant's request therefor; and for damages for failure to create additional parking by removal of a fence, and failure to do additional grading, paving and striping of parking within 90 days of the closing of the lease agreement. Respondents filed an answer denying generally appellant's allegations, and a counterclaim for the balance of rent due under the lease.

The trial court found that appellant was obligated to pay 12 months rent totalling $30,000.00; that it had paid four payments of rent, or $10,000.00, leaving a balance owed of $20,000.00; and that appellant had incurred a gas bill for $433.66 which respondents had to pay. This recap was entered by the trial court:

| | |
|---|---:|
| Appellant is entitled to its deposit | $10,000.00 |
| Appellant is entitled to rattleware inventory | 5,200.00 |
| Appellant is entitled to food inventory | 3,300.00 |
| | $18,500.00 |

Judgment was entered against appellant on its petition, and for respondents on their counterclaim for the $1,933.66.

The restaurant building is located at 308 Blue Ridge Boulevard in Independence, Missouri. It is on the west side of that street and the property leased occupies a part of the lot on the southwest corner of the intersection of Wilson (Independence) Road and Blue Ridge Boulevard. Respondents own a building to its west, across an alley. That building is used as a liquor service business. Respondents also purchased 11 acres, zoned R–2, to the west and south of the leased property. Apparently there were some duplexes on a portion of the eleven acres, an area 41'5" by 58' which extends into the R–2 area to the south of the restaurant building, and no variance from the R–2 zoning to C–3 zoning was ever secured by respondents, although they were aware that there were problems with the parking.

According to Gary Stewart Bond, appellant's secretary-treasurer, the lease was entered into on April 13, 1979 (as it shows). By paragraph 27, lessee agreed to deposit $10,000 cash on its execution, to bear interest at 6%, and lessor was restricted to the uses of the deposit, except it could pledge the deposit as security for a loan to pave and stripe the parking lot, and "Lessor shall return the foregoing deposit with interest to the Lessee at the end of the initial term of this Lease." The restaurant has a seating capacity of 160 chairs and eight four-person booths; the lounge has 40 chairs, 14 bar stools and four four-person booths, which makes a total seating capacity for 262 persons.

At the time the lease was made there was a gravel field area south of the building with room for about 15 cars. About 6 to 7 spots per day were required for employee parking. By paragraph 18 of the lease, respondents were to move the fence on the

north side of the premises to create an additional row of parking, which Bond testified would have created 7 to 10 additional spaces. The seating/parking ratio is one parking space for every four restaurant seats—a need for about 66 spaces total. Appellant had an option to extend the lease or to purchase the property, and was informed by respondents that there was a lack of proper zoning for parking. Paragraph 7 of the lease provided, " * * * If Lessor is not in compliance with all zoning laws, ordinances and other restrictions, it shall take immediate action, at its sole expense, to comply with said zoning laws, ordinances or restrictions. *In the event that Lessor fails to comply with said zoning laws, ordinances or restrictions within 120 days, Lessee shall have as its sole remedy, the right to cancel this lease.*" [Italics added.] As to this clause, Bond testified that the option to purchase had to do with its insertion: " * * * and that's why we were adamant to make that part of the lease, that the zoning would be received, the proper zoning." In accordance with paragraph 7, the lease was terminated by appellant in September, 1982, for failure to get the parking zoning, the termination being effective September 30, 1979.

Zoning and subdivision administrator, Larry L. Mlnarik, corroborated Bond's testimony that the zoning code requires 66 off-street parking spaces for 260 restaurant patrons in the C–3 zoning area. There were only about 18 spaces provided for the leased restaurant premises, 66 spaces being required. There had been no special use granted for parking in the residential area [R–2], to the south of the leased C–3 property. The residential parking area (next to respondents' duplexes) falls within the purview of the ordinance.

Lloyd Phillip Precht testified that no one ever told him that he could not park cars where the residential area used to park. He knew of the parking problems on March 30, 1978, and bought the 11 acres to the west and south (zoned R–2). Certainly, there is no evidence that the City of Independence ever sought to enforce the zoning ordinance as to sufficient parking which was required to be furnished for the leased restaurant building.

The termination clause here is clearly a condition subsequent, 49 Am.Jur.2d, Landlord and Tenant, §§ 998, et seq., pp. 969, et seq. Compare *Medical West Building Corp. v. E.L. Zoernig & Co.,* 440 S.W.2d 744 (Mo. 1969), where there was a fact issue as to whether a building manager had been terminated by lessor, which, if established, would give lessee an option to terminate the lease in accordance with an express clause for termination in the event that lessor fired the building manager. The clause is one that appellant had the right to insist upon to protect itself from any possibility that the city would seek to enforce the zoning provisions, thus putting appellant out of business because of inability to furnish the required parking in the future. The clause takes on special significance when the options to purchase and to renew the lease are considered. If respondents were not required to take "immediate action" to correct the situation, appellant might be deemed to have waived the provision, and would be saddled with the premises not in conformity with parking ordinances, for the first year, or thereafter, if the lease were renewed or the option to purchase were exercised. Note also *Sachs Steel & Supply Co. v. St. Louis Auto Parts and Salvage Co.,* 322 S.W.2d 183 (Mo.App. 1959), which, although holding that a lessee could not abandon a lease because zoning laws prohibited lessee's planned use of the premises, it being presumed to have knowledge of the zoning restriction, noted at page 187, "Had [the] lessee desired to protect itself against the possibility that the intended use of any portion of the premises might be prohibited by prevailing zoning ordinances, * * * it could have refused to execute the lease or insisted that the lease contain conditional clauses or termination privileges based upon these contingencies."

The evidence shows without question that respondents took no "immediate action" to correct the parking situation, and did not do so within the 120 days specified. The contingency giving rise to appellant's right to

terminate the lease occurred, and it timely exercised that option. It appears as a matter of law that appellant is entitled to judgment upon its petition. Respondents argue that they are entitled to a reasonable time to correct the parking situation after notice to them of the termination upon that ground. The argument is untenable because the 120 day period is clearly referable to the time of execution of the lease.

The giving of the notice of termination of the lease put it at an end. Appellant was thereafter not obligated to pay rent for the remainder of the term, and the trial court erred in so ruling.

The judgment is reversed and the case is remanded with directions to enter judgment for appellant against respondents for its deposit, $10,000, for the rattleware inventory, $5,200, and for the food inventory, $3,300, less the gas bill of $433.66, a net of $18,066.34.

All concur.